```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION
------------------------------------X
UNITED STATES OF AMERICA            :
                                    :    OPINION AND ORDER
                                    :
         - against -                :    Case No. 04 CR 699
                                    :
                                    :    Hon. John F. Keenan
GALE NETTLES,                       :       (by designation)
                                    :
              Defendant.            :
------------------------------------X
```

**JOHN F. KEENAN**, United States District Judge:

## BACKGROUND

Defendant is charged in a nine-count indictment.

Count 1 charges defendant with attempting to damage and destroy by means of an explosive a federal building, namely, the Everett McKinley Dirksen Building in Chicago, Illinois ("Dirksen Building"), from December 2003 to August 2004, in violation of 18 U.S.C. § 844(f)(1). Count 2 charges him with attempting to damage and destroy by means of an explosive a building used in interstate commerce, again, the Dirksen Building, in violation of 18 U.S.C. § 844(i).

Count 3 charges an attempt to provide material support to terrorists in August 2004, in violation of 18 U.S.C. §§ 2339A and 2. This count alleges that defendant sold over 1000 pounds of ammonium nitrate fertilizer, intending that it be used in furtherance of violations of 18 U.S.C. §§ 844(f) and 844(i) (described supra), and 18 U.S.C. § 1114 (killing or attempting to kill a federal officer or employee).

Count 4 charges the making of counterfeit United States Currency from May to July, 2004, in violation of 18 U.S.C. § 471.

Counts 5-9 charge the unlawful distribution of counterfeit United States Currency on four separate occasions in and between May and July, 2004, in violation of 18 U.S.C. § 473.

The defendant has brought six motions:

1. Motion for Severance of Counts under Fed. R. Crim. P. 8 and 14.

2. Motion for Transfer to another district under Fed. R. Crim. P. 21(a).

3. Motion in limine to "Prohibit Introduction of Tape Recordings of Non-Testifying Witnesses."

4. Motion that Government provide notice of intention to introduce evidence under Fed. R. Evid. 404(b) and 608(b).

5. Motion in limine relating to prior convictions.

6. Motion to provide defendant with assistance "To Hear and Participate in Court Proceedings."

With the exceptions noted below, the Government opposes the motions.

## **FACTS**

While he was serving a two-year federal sentence for counterfeiting offenses imposed by a Northern District of Illinois Judge in the Dirksen Building, defendant told a fellow inmate about a plan to destroy the Dirksen building using a truck bomb. Defendant asked the other inmate if he had a source of ammonium nitrate fertilizer, which can be combined with other materials to create an explosive device. The inmate cooperated with the FBI and supplied defendant with a telephone number,

purportedly of an individual who could assist defendant with obtaining ammonium nitrate fertilizer. Upon his release from prison, defendant called the phone number and ultimately met with an undercover FBI agent to discuss the purchase of fertilizer.

The facts are more completely recited in the 57-paragraph affidavit of Special Agent Sonjia K. Wing of the FBI, dated August 5, 2004, in support of the Magistrate's Court Complaint in the case.

During the initial meeting, defendant told the undercover officer that the federal courthouse downtown (the Dirksen Building) is blocking the view of the lake. He said he had a problem with the whole federal judicial system and wanted to build a bomb powerful enough to collapse the entire building. Defendant also told the undercover officer during the meeting that defendant was into "graphic arts" and made money the "old-fashioned way." This apparently referred to counterfeiting. Defendant explained that he needed time to get his money together and explained his plan to counterfeit money when he got his computer back from his attorney.

In a series of conversations with the undercover officer, defendant said that his ability to finance his bomb plot would depend on his success in counterfeiting money. The undercover officer provided defendant with some of the materials needed to complete the counterfeiting. Defendant ultimately sent the officer $9000 in counterfeit money, as charged in Count 9. After receiving the $9000, the officer told defendant that the

3

counterfeit money defendant sent would sufficiently cover the cost of ammonium nitrate fertilizer.  Defendant also allegedly asked a cooperating witness ("CW") if she could introduce him to someone affiliated with terrorist organizations.  The CW had been purchasing counterfeit money from defendant during the investigation, and she received from defendant the counterfeit currency at issue in Counts 6, 7, and 8.  The CW introduced defendant to someone purporting to be involved in terrorism, who was actually another undercover FBI agent.

On August 4, 2004, defendant accepted from the undercover officer delivery of approximately 500 pounds of purported ammonium nitrate fertilizer at a storage facility.  On August 5, 2004, while directing the undercover officer, defendant delivered over 1000 pounds of additional purported ammonium nitrate fertilizer to the purported terrorist.  Thereafter, defendant allegedly accepted $10,000 from the purported terrorist.  He was then arrested.

## **MOTION FOR SEVERANCE OF COUNTS**

Fed. R. Crim. P. 8(a) permits the joinder of multiple offenses "if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."  Fed. R. Crim. P. 14(a) allows the Court to sever the offenses or provide other appropriate relief if joinder "appears to prejudice a defendant or the government."  The Supreme Court has stated that "Rule 14 leaves the determination of risk of

prejudice and any remedy that may be necessary to the sound discretion of the district courts." <u>Zafiro v. United States</u>, 506 U.S. 534, 541 (1993); <u>see</u> <u>United States v. Moore</u>, 115 F.3d 1348, 1362 (7th Cir. 1997).

Here, defendant's counterfeiting activity was part of a common scheme and plan to destroy the Dirksen Building with a truck bomb. Defendant allegedly made clear that counterfeiting would finance his bomb plot. During his dealings with an informant who was purchasing counterfeit money from defendant, defendant asked the informant if she knew anyone affiliated with a terrorist group. Defendant sold ammonium nitrate fertilizer to a purported terrorist to whom the informant introduced him.

There is no unfair prejudice caused by the joinder of offenses. The motion for a severance of counts is denied.

### MOTION FOR TRANSFER

Under Fed. R. Crim. P. 21(a), venue of a trial is properly transferred to another district "if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there."

Defendant asks that venue in this case be transferred outside the Northern District of Illinois because all jurors at a trial here would have been potential victims if they had been serving on juries in the Dirksen Building when defendant blew up a bomb outside the building. The Court disagrees. The potential jurors at defendant's trial likely were not among defendant's

5

targets. The jurors at trial would not have been involved in jury service nearly one year ago, during defendant's efforts to further his plot. Those jurors were different people.

There is no showing that defendant cannot receive a fair and impartial trial in the Northern District of Illinois. Any concerns regarding the potential impartiality of jurors will be addressed during the voir dire process.

Defendant has asserted that there has been a substantial amount of pretrial publicity in the Northern District of Illinois about this case. He has acknowledged that it has not been as great as the pretrial publicity in United States v. Matthew Hale, No. 03 CR 11 (N.D. Ill.). Hale, a white supremacist, threatened to kill a Northern District of Illinois Judge. The Hale trial occurred in the Dirksen Building with a Northern District of Illinois jury and a judge from another district sitting by designation. I, of course, am from another district, indeed another circuit, sitting by designation.

Pretrial publicity in this case has been substantially less extensive than in Hale and other recent and future trials, including the upcoming trial of former Illinois Governor George Ryan. The case, United States v. Warner, No. 02 CR 506 (N.D. Ill.), will be tried in the Dirksen Building. As in those cases, defendant's concerns about pretrial publicity can be addressed adequately during jury selection.

Nothing has been presented to the Court to demonstrate that defendant cannot receive a fair and impartial trial in the

6

Northern District of Illinois with a jury from the district. Defendant's motion to transfer is denied.

## MOTION IN LIMINE TO PROHIBIT INTRODUCTION OF TAPE RECORDINGS

Defendant moves to preclude the Government from playing tape recordings of his conversations unless the Government calls the other participants in those conversations to testify at trial. He argues that the statements of other participants are inadmissible hearsay, and to allow the recordings without the testimony of those participants would violate his Sixth Amendment Confrontation Clause rights.

The rule in the Seventh Circuit is that, where tape recorded evidence is admitted in the absence of testimony by the informant who recorded the conversations, the Confrontation Clause is not violated if the Government specifies, and the jury is instructed, that the statements of the informant are offered not for their truth, but rather to provide context so as to make the defendant's statements intelligible as admissions. United States v. Davis, 890 F.2d 1373, 1380 (7th Cir. 1989).

The Government proposes to request an instruction in this case that statements of the informant on tape are not offered for their truth but "to provide context . . . to make . . . defendant's statements intelligible as admissions."

In Davis, cited supra, the defendant contended that "his sixth amendment right to confront the witnesses against him was violated when the trial court admitted the tape recordings with [the informant] when [the informant] was not called to

7

testify." Id. at 1379. The trial court admitted the recorded statements of the non-testifying informant because they provided context for the jury to understand the defendant's admissions. The Court instructed the jury to that effect. Id. at 1379-80. The Seventh Circuit rejected the defendant's Sixth Amendment confrontation claim: "[T]he admission of [the informant's] portion of the conversations do[es] not implicate [the defendant's] sixth amendment rights because the tape recorded statements were admitted for the limited purpose of placing [the defendant's] statements in context." Id. at 1380. The defendant was not prejudiced by his inability to cross-examine the non-testifying informant. See id. (listing analogous holdings from other circuits); see also United States v. Gajo, 290 F.3d 922, 929-30 (7th Cir. 2002) (statements of an informant may be admitted as non-hearsay to provide context to a conversation).

In United States v. McClain, 934 F.2d 822 (7th Cir. 1991), the defendant claimed that his Sixth Amendment rights were violated because an informant, whose conversations were introduced in evidence, was not called to testify. The Seventh Circuit rejected the defendant's Sixth Amendment confrontation claim. The jury had been told not to consider the informant's statements for the truth of the matters asserted. Id. at 832; accord, e.g., United States v. Kabbaby, 672 F.2d 857, 864 (11th Cir. 1982). In McClain, the defendant claimed that he had a right under Fed. R. Evid. 607 and 806 to cross-examine the non-testifying informant whose statements were consensually recorded.

McClain, 934 F.2d at 832. The Seventh Circuit, after noting that the jury was instructed not to consider the informant's statements for their truth, stated that "[j]ust as [the informant] was not a witness for sixth amendment purposes, he was likewise not a witness for Rule 607 impeachment" purposes. Id. The Seventh Circuit also rejected the argument that impeachment was permitted under Rule 806. The non-testifying informant's statements were not admitted for their truth; therefore they were not hearsay, and no impeachment was permissible under Rule 806. See id. at 833.

The United States Supreme Court's decision in Crawford v. Washington, 541 U.S. 36 (2004), does not apply to the situation in this case. The Crawford holding applies only to statements offered for their truth - such as police interrogations of unavailable witnesses. In Crawford, the Supreme Court noted that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." Id. at 59 n.9.

This motion is denied.

### **MOTION FOR DISCLOSURE OF PRIOR ACTS EVIDENCE**

Defendant seeks an order directing early disclosure of Rule 404(b) evidence. Fed. R. Evid. 404(b) requires that the Government provide "reasonable notice in advance of trial" of the "general nature" of any evidence of "other crimes, wrongs or acts" to be introduced for purposes other than proving character in order to show action in conformity therewith. The Government

9

proposes to submit its notice to defendant no later than two weeks prior to trial, as previously proposed in the Government's Fed. R. Crim. P. 16 letter sent to defendant. The Court finds this proposal reasonable, and hereby directs the Government to supply the Court and defense counsel any Rule 404(b) evidence that it may seek to introduce at trial no later than two full calendar weeks in advance of jury selection in this matter.

Defendant also requests an order requiring the Government to give pre-trial notice of any Rule 608(b) evidence against him. The Government opposes the request. Fed. R. Evid. 608(b) permits inquiry, for impeachment purposes, into prior specific instances of conduct on cross-examination of a witness where the conduct inquired about bears on the issue of credibility. Unlike Rule 404(b), Rule 608(b) does not require pretrial disclosure of any evidence which might be used for impeachment purposes. Defendant cites no authority entitling him to pretrial disclosure of Rule 608(b) evidence.

The late Judge Alesia of the Northern District of Illinois wrote cogently on this issue: "Rule 12(d)(2) of the Federal Rules of Criminal Procedure allows the 'defendant [to] request notice of the government's intention to use (<u>in its evidence in chief at trial</u>) any evidence which the defendant may be entitled to discover under Rule 16 subject to any relevant limitations in Rule 16.' By its terms, Rule 608(b) evidence may not be used by the government in its case-in-chief and therefore such evidence is not discoverable under Rule 12 of the Federal

10

Rules of Criminal Procedure." United States v. Sims, 808 F.
Supp. 607, 611 (N.D. Ill. 1992) (citation omitted); see also
United States v. Cerro, 775 F.2d 908, 915 (7th Cir. 1985)
("[N]othing in [Fed. R. Crim. P. 12 or 16] suggests that
impeachment evidence is discoverable.").

The Government will provide notice of its Rule 404(b)
evidence two weeks in advance of trial. To the extent that
defendant seeks notice of Rule 608(b) evidence over and above the
Government's Rule 404(b) disclosure, the motion is denied.

### MOTION IN LIMINE REGARDING PRIOR CONVICTIONS

Defendant moves pursuant to Fed. R. Evid. 609 for an
order prohibiting the Government from using defendant's 2001
counterfeiting conviction for impeachment purposes in this case.[1]
This conviction resulted in a sentence of 24 months' imprisonment
and two years' supervised release. Defendant claims this
conviction is inadmissible under Fed. R. Evid. 609(a)(1) because
he currently is charged with counterfeiting, and the prejudicial
effect of the prior conviction outweighs its probative value.
The Government responds that the prior conviction is admissible
under Rule 404(b) as evidence of defendant's motive to destroy
the Dirksen building and kill judges.

The Government's Rule 404(b) argument does not answer
defendant's application. The Government can introduce evidence

---

[1] Defendant has numerous prior convictions dating back to
the 1950's, 1960's, and 1970's. The Government represents that
it does not intend to present at trial convictions over ten years
old. See Fed. R. Evid. 609(b). To the extent that defendant
seeks to exclude these convictions, the motion is moot.

11

of prior crimes to show motive during its case-in-chief, as long as such evidence passes muster under Rule 403. But motive is not germane to the issue of whether the Government may impeach the defendant with the prior counterfeiting conviction if he decides to testify. That question is governed by Rule 609(a).

Fed. R. Evid. 609(a)(1) provides that "evidence that an accused has been convicted of [a crime punishable by death or imprisonment in excess of one year] shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused." Defendant argues that introduction of the prior conviction for impeachment purposes will be overly prejudicial. However, defendant ignores Fed. R. Evid. 609(a)(2), which provides that "evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement." There is no doubt that "counterfeiting is in the nature of crimen falsi." United States v. Noble, 754 F.2d 1324, 1331 (7th Cir. 1985). Thus, defendant's 2001 counterfeiting conviction is automatically admissible for purposes of impeachment under Rule 609(a)(2). Neither Rule 609(a)(1) nor Rule 403 alters this result. Id.; United States v. Kuecker, 740 F.2d 496, 501-02 (7th Cir. 1984).

This motion is denied.

### **MOTION REQUIRING ASSISTANCE NECESSARY TO HEAR COURT PROCEEDINGS**

Defendant moves for an order requiring the United States Marshals Service and/or the Bureau of Prisons to provide him with sufficient assistance to hear and participate in Court

proceedings.  Defendant has hearing difficulties.  He claims to have made several requests of the Metropolitan Correctional Center ("MCC") in Chicago for a hearing aid or some other device to allow him to participate in the proceedings, but without success.  The Government agrees the reasonable accommodations should be made and that defendant can be provided with headphones which receive the sounds picked up by microphones in the courtroom.  If headphones are unavailable, the Government represents that other arrangements can be made within the courthouse without recourse to the United States Marshals Service, the MCC or the Bureau of Prisons.

Defendant's motion is granted.  The Court does not understand why the Government wishes to contain the responsibility for providing hearing assistance within the courthouse.  Headphones have been known not to work, and I do not wish to sit on the bench waiting for replacements to be found or other arrangements to be made.  Instead, this issue will be resolved well in advance of trial.  Upon defendant's request, the Court directs the United States Marshals Service, the MCC or the Bureau of Prisons to provide defendant with whatever hearing assistance is necessary to allow him to participate in his trial.  The hearing aid, whatever the type, should be provided far enough in advance so that the defendant is completely comfortable with it the next time he appears before the Court.  Headphones shall be made available at the courthouse as well, but only as a backup to the hearing aid, or as a supplement.

Ultimately, the Office of the United States Attorney for the Northern District of Illinois is responsible for ensuring compliance with this order.

## CONCLUSION

1. The motion for severance of counts is denied.

2. The motion for transfer is denied.

3. The motion in limine to "Prohibit Introduction of Tape Recordings of Non-Testifying Witnesses" is denied.

4. The motion for disclosure of Rule 404(b) evidence is moot. The Government will provide such evidence two weeks prior to trial. The motion for disclosure of evidence pursuant to Rule 608(b) is denied.

5. The motion under Rule 609(a) to prohibit the Government from using defendant's 2001 counterfeiting conviction for impeachment purposes is denied.

6. The motion to provide defendant with assistance "To Hear and Participate in Court Proceedings" is granted.

## EXCLUSION OF TIME

Time is excluded under the Speedy Trial Act, 18 U.S.C. § 3161, until September 6, 2005, the day that jury selection will begin. Counsel earlier indicated that this was the date they preferred for trial.

SO ORDERED.

Dated:  New York, New York
        June 29, 2005

JOHN F. KEENAN
United States District Judge